**MUTUAL FINANCE COMPANY, Plaintiff, v. MEADE et, Defendants.**

Common Pleas Court, Cuyahoga County.

Nos. 722390, 722391, 722396, 722397, 722400, 722403, 722603.

Decided July 21, 1959.

## OPINION

By DANACEAU, J.

These are actions in replevin brought by the Mutual Finance Company, plaintiff, against each of the above named defendants, each of whom purchased and received delivery of a motor vehicle at the showroom and place of business of N. J. Popovic, Inc., a licensed motor vehicle dealer operating a Chrysler agency at 3167 West 117th Street in the City of Cleveland. Replevin is sought on the basis of possession of statements of origin from the Chrysler Corporation to N. J. Popovic, Inc. in the case of new automobiles and certificates of title in the case of used automobiles and wholesale chattel mortgages from N. J. Popovic to the Mutual Finance Company. The plaintiff will be referred to herein as Mutual and N. J. Popovic, Inc. as Popovic. The name of the purchaser, case number, type of car, and wholesale mortgage in the above entitled cases are as follows:

| Purchaser | Case No. | Type of Car | Wholesale Mortgage |
|---|---|---|---|
| Ernest Meade | 722,390 | 1957 Plymouth | $1,200.00 |
| Wilbur Reese | 722,391 | 1957 Chevrolet | 950.00 |
| William Klinger | 722,396 | 1959 Chrysler | 3,335.80 |

| Louis H. Runge | 722,397 | 1959 | Chrysler | 2,094.84 |
|---|---|---|---|---|
| Municipal | | | | |
| Employees Union | 722,400 | 1959 | Chrysler | 3,747.05 |
| Employees Union | 722,400 | 1959 | Chrysler | 3,802.20 |
| Employees Union | 722,400 | 1959 | Chrysler | 3,909.30 |
| Employees Union | 722,400 | 1959 | Chrysler | 3,747.05 |
| Leonard P. Beachem | 722,403 | 1959 | Chrysler | 3,178.65 |
| John E. Housley | 722,603 (724,272) | New | Yorker-Chrysler | 3,845.95 |

Each of the defendants, members of the general public, paid for and received delivery of the respective cars at the showroom and place of business of Popovic without actual knowledge or notice of such wholesale mortgages or of the floor plan to which Mutual and Popovic were parties, or that Mutual had possession of statements of origin or wholesale chattel mortgages, both unrecorded at the time of sale, and each of said defendants in part payment for the cars they received gave Popovic a note and mortgage, which was then and there approved and accepted by Mutual, to whom Popovic assigned said retail notes and mortgages. Although the retail mortgages were on the same automobiles covered by the wholesale mortgages, Mutual disbursed the amounts loaned on the retail mortgages to Popovic without cancelling the floor plan mortgages. Mutual is now demanding payment from the purchasers on the retail notes and mortgages and is at the same time asserting its lien in these replevin actions on the wholesale or floor plan mortgages from Popovic.

Each of the defendants by answer and cross-petition claims that they are innocent purchasers of automobiles, that as to them the wholesale or floor plan mortgages are invalid by reason of the knowledge and conduct of Mutual, that they are entitled to certificates of title which are being wrongfully withheld, and they accordingly seek equitable relief and damages.

For more than eight years ending in April 1959 Mutual exclusively furnished all the floor planning or wholesale financing of Popovic. Prior to January 1958 the statements of origin and the new motor vehicles were delivered to Popovic. Thereafter, finding that Popovic was "not financially secure enough" Mutual insisted that such statements of origin be sent directly to the finance company and kept in its possession to be released by it upon payment by Popovic of the amount advanced with respect to the particular motor vehicles. It appears that Popovic had some financial difficulties at that time and that four motor vehicles had been sold and payment received by Popovic but not remitted to Mutual. In the language of the automobile business such conduct and default placed Popovic "out of trust." Mutual then gave financial help through a capital loan of $18,257.00 to be repaid by Popovic in installments of $90.00 each time an automobile was sold. (There is now due on this loan the sum of approximately $600.00.) Popovic received these funds by way of credit on his floor plan as follows:

$12,143.60—payment to Mutual on four cars "out of trust"
6,114.35—partial payments on twelve cars on floor plan
**not sold**

The arrangement and understanding between Mutual and Popovic with respect to the floor plan was continued. Accordingly, motor vehicles were delivered by Chrysler to Popovic to be offered, sold and delivered to general public purchasers in the usual course of trade at the showroom and place of business of Popovic. The statements of origin by Chrysler were sent to and kept by Mutual and were unrecorded. Mutual also received from Popovic a wholesale note and mortgage which also remained unrecorded at the time of sale to the general public. Popovic also gave Mutual power of attorney authorizing one of its officers to sign chattel mortgages on behalf of Popovic. Upon sale and delivery of automobiles to the general public Popovic committed itself to transmit immediately to Mutual all funds so received and secure releases of such motor vehicles from the floor plan mortgages. On failure so to do, Popovic would be "out of trust."

Mutual policed the floor plan by periodic monthly floor checks at the place of business of Popovic. When cars for which Mutual had not received payment were missing, explanations from Popovic were requested. Explanations such as "The purchaser has not as yet paid for the car" were readily accepted without further investigation.

It appears that Popovic had further financial difficulties as a result of which a meeting between Mutual, Popovic and representatives of the Chrysler Corporation was held in October 1958. Mr. Popovic furnished $25,000.00 of his personal funds to his corporation and the floor plan continued with a limitation, however, on the number of automobiles to be acquired by Popovic from Chrysler.

On April 7, 1959 Popovic admitted to Mutual that it was "out of trust." A floor check followed on April 8th and about twenty-five floor plan cars were found to be missing. Mutual then proceeded to move in and by April 17th had repossessed the floor plan automobiles on Popovic's premises. On April 23rd Mutual instituted these proceedings in replevin, predicated on the defaulted floor plan mortgages from Popovic. N. J. Popovic, Inc. is now in bankruptcy in the Federal District Court.

Mutual holds a retail note and mortgage given as part of the purchase price from each of the above named defendants who did not have actual notice or knowledge of the wholesale mortgages from Popovic to Mutual on the same cars or that Mutual had possession of the statements of origin from Chrysler to Popovic. It is to be noted further that at the time the motor vehicles were purchased and delivered the certificates of origin and the floor plan mortgages were not recorded or noted with the Clerk of Courts.

Wherever retail financing was necessary as part payment to complete a sale, except of course in those cases where the purchaser had some other finance company, Popovic called Mutual. Mutual was given the terms of the transaction, the identity of the purchaser, the general type of car, and in turn gave approval of the loan. Popovic had on hand the necessary blanks which were accordingly filled out and signed by the purchaser. The motor vehicle was then delivered to the purchaser with the understanding that the dealer would forward the certificate of title, a charge therefore having been made and paid. Sec. 4505.06 R. S., in part reads:

"In the case of the sale of a motor vehicle by a dealer to a general purchaser or user, the certificate of title shall be obtained in the name of the purchaser by the dealer upon application signed by the purchaser. In all other cases such certificates shall be obtained by the purchaser. In all cases of transfers of motor vehicles, the application for certificate of title shall be filed within three days after the delivery of such motor vehicle."

Popovic forwarded the retail note and mortgage in an envelope, the face of which was a draft for the net amount of the loan. Also set forth on the face of the draft was the name of the purchaser and the make, model and serial number of the motor vehicle. Usually the certificate of title was not in the draft envelope, but was forwarded to Mutual at a later date. Mutual paid Popovic the amount of the draft, but did not cancel its floor plan mortgage lien. It proceeded to enforce payment of the retail note and mortgage and sent a written notice to each purchaser that it held such note and mortgage and set forth therein the name of the dealer, the date purchased, the date of the note, the description of the motor vehicle and its serial number and the amount of the note and the amount and date of each installment. A coupon payment book accompanied each notice and Mutual has received a number of payments in some of the cases.

Mutual knew that it held floor plan notes and mortgages on each of the cars involved in the above named cases. They form the very basis of these replevin actions. Mutual knew that it had a statement of origin on each new car at the Popovic showroom and cannot possibly claim that it did not have actual knowledge that it was approving and accepting a second or retail mortgage on the very same car. Mutual also knew that it floor planned the used cars on the premises of Popovic and that it held the certificates of title in such cases. It therefore knew that it was approving and accepting a second or retail mortgage on the same car.

A mere inspection of the drafts, the face and the enclosure, would have disclosed the name of the purchaser and the serial number of the car. Mutual cannot disclaim knowledge because the individual sent to pay the draft did not inspect the draft or its contents, did not check further in the office records, or did not personally know what the Mutual files would disclose. Mutual cannot disclaim knowledge, which it clearly had, because one of its personnel or one department did not know what the remaining personnel and departments must or should have known and what their files would have disclosed.

In approving and accepting the retail notes and mortgages given by innocent purchasers (with warranties therein against other liens) on motor vehicles on which it already claimed floor plan liens and in forcing payment thereon, Mutual must be deemed to have extinguished its floor plan or wholesale mortgage liens and it must now look to Popovic as its debtor for any monies due. Otherwise Mutual would be party to the perpetration of fraud on such innocent purchasers who acquired their automobiles in good faith in the usual course of trade and without notice of the floor plan mortgages. The floor plan to which Mutual and Popovic were parties gave such purchasers every right

to believe that Popovic was the owner of the motor vehicles and had every right to sell and deliver the cars and would thereafter furnish certificates of title. Mutual clothed Popovic with such authority to the buying general public and the acts of Popovic with respect to such innocent purchasers must be deemed to be the acts of Mutual.

Ohio has adhered to the floor plan doctrine described in 9 O. Jur. 2d 241, as follows:

"* * * The rule adopted in Ohio as to such mortgages—which rule has been termed the 'floor plan' rule—is that such a mortgage is void as against a bona fide purchaser without notice, on the theory that, notwithstanding the conditions of the mortgage and its record, an inference of apparent authority in the dealer to sell arises from the fact of his permission to exhibit the property, estopping and precluding the mortgagee from asserting the mortgage against such person. This rule is designed to protect the buying public who, without notice, purchase automobiles in the usual course of business from automobile dealers, as against the owners or mortgagees of the automobiles who have clothed the dealers with apparent authority to sell."

The floor plan rule is for the benefit of innocent purchasers without actual notice of the floor plan mortgage, acquiring the property in good faith in the usual course of trade. It does not apply to dealers who presumably are familiar with the registration and title laws nor does it apply to a pledgee or mortgagee. Syllabus 2 in **National Guarantee & Finance Co. v. The Pfaff Motor Car Co. et al, 124 Oh St 34,** reads

"2. The so-called floor plan rule, whereby an owner who has placed a car on the floor of a retail dealer's showroom for sale is estopped to deny the title of an innocent purchaser who has purchased from such dealer in the ordinary retail dealing, without knowledge of any conflicting claim, does not apply to a pledgee or mortgagee."

The application of the floor plan rule to innocent purchasers, but not to dealers, mortgagees or mere creditors makes significant the language in §4505.13 R. C., of the Certificate of Title Law, the pertinent part of which reads:

"* * * Exposure for sale of any motor vehicle by the owner thereof, with the knowledge or with the knowledge and consent of the holder of any lien, mortgage, or encumbrance thereon, shall not render such lien, mortgage, or encumbrance ineffective as against the creditors of such owner, or against holders of subsequent liens, mortgages, or encumbrances upon such motor vehicle."

The Legislature has omitted from this provision the innocent purchasers to whom the floor plan rule would apply and has named the creditors and lien holders to whom the floor plan rule would not apply. The Legislature must have intended this provision to have some meaning. The construction given it by the plaintiff would make it entirely unnecessary as a part of the Certificate of Title Law. The provision therefore must have been intended to continue in effect the floor plan rule as it had been applied in Ohio. In **Hostetler v. The National Acceptance Co., 36 Oh Ap 141,** the syllabus reads:

"The holder of a chattel mortgage upon an automobile who permits the mortgagor, a retail automobile dealer, to place said automobile upon

its salesroom floor for the purpose of sale to one who might be attracted thereby, will not be permitted to assert its mortgage against an innocent purchaser, who bought the car from said dealer in the ordinary retail way for value and without actual notice of such mortgage."

Very apt are the words in the opinion of Judge Pardee at page 145 as follows:

"No tags or marks were placed upon the cars to warn or notify prospective purchasers that the cars were mortgaged, the mortgagee relying solely upon its mortgage and the constructive notice with which it claimed innocent buyers were charged, if the dealer failed to account for the money received from the sales.

"By the contract and by the course of conduct of the mortgagor and mortgagee, the mortgagor was allowed to hold itself out to the public as a retail dealer in automobiles, with the right to sell the mortgaged cars without let or hindrance; and now to permit the mortgagee to assert its mortgage against the defendant, an innocent purchaser in the usual course of trade for value and without notice, would be, under the circumstances of this case, a fraud upon such innocent party, and would permit the one who made the fraud possible to take advantage of its own wrong. We hold the mortgage, as against the defendant, to be void and of no effect."

In his concurring opinion in **Automobile Finance Co. v. Munday, 137 Oh St 504, 524** (decided 1940) Justice Matthias said:

"It is well settled that when an owner places a car on the floor of a retail dealer's showroom for sale, and it is purchased in the usual course of business by one without knowledge of any conflicting claims, the purchaser will be protected and the owner estopped to set up his title against him."

The main opinion, per Turner, J., states (p. 521):

"* * * The very purpose of the law is to protect ownership against fraud."

The opinion further states:

"Under the facts in this case, plaintiff below was not entitled either to the right of property or the right of possession of this automobile. Although Usinger's right of property may be defective by reason of his lack of possession of a certificate of title, the evidence clearly establishes that he had the right of possession.

"Replevin will not lie against one who has the right of possession at the time of the commencement of the suit."

The Supreme Court reviewed the Certificate of Title Act and found in favor of the defendant, Usinger, notwithstanding he had no certificate of title. It is also to be noted that in the opinion of Justice Matthias in **Workman v. Republic Mutual Insurance Co., 144 Oh St 37,** it is said at **page 48:**

"Without deciding whether the legal title had passed, actual ownership with complete possession and control had certainly passed to Mrs. Rhodes, and if legal title had not been transferred as agreed, her right to a certificate of title was enforceable. **Automobile Finance Co. v. Munday, 137 Oh St 504, 30 N. E. (2d), 1002.**"

Plaintiff relies on **Butler v. Case, 161 Oh St 288,** in which it was held that the provisions of §4505.05 R. C., abrogated the common law of resulting trusts in Ohio with respect to motor vehicles. This was an action between the daughter and the estate of her father and the issue was whether or not a gift of the automobiles was established by the evidence. No fraud was claimed and no rights of an innocent purchaser were involved. It is significant that in the opinion, per Middletown, J., it was said:

"It is to be noted that neither fraud nor theft is involved in the instant case. This decision will not control in a situation where the facts may warrant a decision that a certificate of title under the Ohio act is voidable on account of fraud."

A recent case before the Supreme Court was that of **Lex Mayers Chevrolet Co. v. Buckeye Finance Co., 169 Oh St 181,** decided April 29, 1959. The Court was equally divided and for that reason entered an affirmance of the judgment of the Court of Appeals which held that doctrine of equitable estoppel was applicable against a finance company and prevented it from asserting its rights based on the certificate of title. The opinion of the Court of Appeals appears in **107 Oh Ap 235,** and the Syllabus reads:

"Where a loan company, which loaned money on a motor vehicle purchased by a minor, title to which was placed in the name of his stepfather, encourages the purchaser, after he reaches the age of majority, to leave such title in the name of his stepfather, and accepts full payment from the purchaser except the last payment which is paid by a dealer to whom the vehicle was assigned as a 'trade-in' by such purchaser; such loan company is precluded, by equitable estoppel, from asserting its rights, based on the certificate of title, in derogation of the rights of the assignee dealer."

It would therefore appear that the scope of Butler v. Case is limited to the facts of that case and to similar situations; and that it was not intended to deprive a court of equity of the power to grant equitable relief to prevent fraud.

The floor plan rule as applied in Ohio was designed to prevent fraud.

The rule is universal and well settled that fraud is one of the grounds upon which equity will grant relief and that construcitve fraud, or inequitable conduct, is remedial in equity. Cases for relief against a constructive fraud appeal to the jurisdiction of courts of equity and constructive fraud is very properly under its supervision, there being no other adequate remedy. As stated by Justice Matthias in Workman v. Republic Mutual Insurance Co., supra, "her right to a certificate of title was enforceable."

The Court finds from the evidence that the wholesale or floor plan mortgage liens on the motor vehicles involved herein are now void and of no effect, that the statements of origin and certificates of title pertaining thereto belong to the defendant cross-petitioners, that plaintiff may not in good conscience retain or withhold the statements or certificates from innocent purchasers for value beneficially entitled thereto, that a constructive trust is imposed as a means of prevention or correction of fraud, that plaintiff now holds such statements of origin and

certificates of title as constructive trustee for the use and benefit of said cross-petitioners, and that plaintiff should take all steps necessary to provide the cross-petitioners with certificates of title, subject only to notations thereon of the retail mortgages signed and executed by them.

The evidence discloses no malice or evil motive on the part of Mutual Finance Company and no exemplary or punitive damages may be allowed.

Wherever the defendants have retained possession and use of their automobiles the compensatory damages are negligible, and none will be allowed. Wherever the defendants have been deprived of the posssssion and use of the automobiles this Court will retain jurisdiction for the purpose of assessing compensatory damages. The plaintiff will pay all court costs.

The decree is for the defendants on their cross-petitions for the relief prayed for and the wholesale or floor plan mortgages held by plaintiff and upon which these actions in replevin are based are adjudged to be void and of no effect.